DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Wayne H. Barger, appeals the September 19, 2005 decision of the Bowling Green Municipal Court convicting appellant of Operating a Vehicle while Intoxicated ("OVI"), R.C. 4511.19(A)(1)(a), and violating R.C. 4511.39(A), Turn and Stop Signals. For the reasons set forth herein, we affirm the trial court's judgment.
 {¶ 2} On April 4, 2005, appellant was charged with OVI and a turn signal violation. Pursuant to R.C. 4511.191, appellant was also placed under an Administrative License Suspension ("ALS") for failure to submit to a chemical test. On April 5, 2005, appellant filed an appeal from the ALS suspension; following a hearing on April 11, 2005, the appeal was denied. On May 12, 2005, appellant filed an appeal with this court,
 {¶ 3} The trial court proceeded with the OVI and signal charges during the pendancy of appellant's ALS appeal. On May 16, 2005, appellant filed a motion to suppress arguing that there was no reasonable cause to stop appellant, there was no probable cause for arrest, and that post-arrest questioning of appellant after he requested counsel was violative of his Miranda rights.
 {¶ 4} In its June 2, 2005 judgment denying the motion, the trial court indicated that in rendering its decision the court relied on the testimony presented at the April 11, 2005 ALS hearing, the videotape of the traffic stop, and the stipulations of the parties. The court then found that: 1) the officer properly stopped appellant for failing to signal at least 100 feet prior to turning; 2) probable cause existed to arrest appellant for failing to display his license; 3) the HGN test was performed in substantial compliance with testing standards; and 4) appellant was not interrogated in violation of Miranda.
 {¶ 5} On August 30, 2005, appellant filed a motion for a jury view; the motion was denied just prior to the start of the September 13, 2005 jury trial. At trial, the state presented the testimony of Bowling Green Police Officer Michael Clingenpeel, Bowling Green Police Sergeant Paul Tyson, and Bowling Green Police Officer Jeffrey Lowery. The state also presented the videotape of the stop which was played during Clingenpeel's testimony.
 {¶ 6} A summary of the state's case is set forth in Officer Clingenpeel's testimony. On April 4, 2005, at approximately 2:30 a.m., Officer Clingenpeel observed appellant's vehicle pulling out of an alley next to a bar in Bowling Green, Wood County, Ohio. Clingenpeel followed appellant for approximately two miles and testified that he was driving approximately ten miles under the posted speed limit. Clingenpeel also stated that appellant made a wide turn; Clingenpeel was not able to stop appellant then because they were briefly out of his jurisdiction.
 {¶ 7} Clingenpeel testified that appellant was stopped at a stop sign and then signaled a turn into a hotel parking lot. Clingenpeel then activated his lights and stopped appellant for failing to signal his turn within 100 feet. Appellant got out of his vehicle and began arguing with the officer; he refused to get back in his vehicle despite repeated requests. Appellant stated that he was a registered guest at the hotel; this was later determined to be false. Appellant was initially placed under arrest for failing to display his driver's license; the license was eventually found in the vehicle.
 {¶ 8} Clingenpeel testified that when he and Sergeant Tyson were securing appellant he noticed that appellant's eyes were bloodshot. Clingenpeel also detected a moderate odor of alcohol. Clingenpeel stated that appellant initially denied drinking alcohol that night but eventually admitted that he had. Further, prior to any mention of alcohol, appellant stated to the officers that he did not want a DUI.
 {¶ 9} Clingenpeel next testified regarding his training and how he administered the Horizontal Gaze Nystagmus ("HGN") test. Clingenpeel stated that he observed nystagmus in appellant's right eye but could not conclude the test because appellant would not keep his head still. Thereafter, appellant was placed under arrest for OVI based upon his driving ability, his behavior, his slurred speech, the moderate odor of alcohol, and the results of the HGN test. Appellant refused to take the chemical test.
 {¶ 10} In his defense, appellant testified that on the night of his arrest his shift at the train terminal near Toledo, Ohio, ended at 10:30 p.m., but he did not leave work until about 11:30 p.m. Appellant, a nearby Grand Rapids, Ohio resident, stopped by a local bar to discuss plans for his new roof with the contractor. Appellant testified that he did not really want to stop at the bar because he had been ill and had been working long hours. Appellant testified that he did not consume alcohol at the bar, but that beer had been spilled on him. Appellant further stated that he had planned to register at the hotel where he had been stopped because he had just been informed that his mother was in the hospital and he was locked out of her house (where he lived.) Finally, appellant explained that if he appeared belligerent on the videotape it was because his family had had prior dealings with Officer Clingenpeel and he was upset about it.
 {¶ 11} At the conclusion of the trial the jury found appellant guilty of OVI, in violation of R.C. 4511.19(A)(1)(a). This appeal followed.
 {¶ 12} Appellant now raises the following six assignments of error:
 {¶ 13} "Assignment of Error No. 1
 {¶ 14} "The trial court erred in overruling defendant-appellant's motion to suppress where there was no reasonable cause to stop the defendant-appellant based upon any violation of traffic law.
 {¶ 15} "Assignment of Error No. 2
 {¶ 16} "The trial court erred in overruling defendant-appellant's motion to suppress evidence which was obtained only after defendant-appellant had been arrested without probable cause.
 {¶ 17} "Assignment of Error No. 3
 {¶ 18} "The trial court erred in overruling defendant-appellant's motion to suppress evidence of field sobriety tests which the officer indicated were not done pursuant to his training.
 {¶ 19} "Assignment of Error No. 4
 {¶ 20} "The trial court erred in overruling defendant-appellant's motion for a jury view.
 {¶ 21} "Assignment of Error No. 5
 {¶ 22} "The trial court erred in ruling that counsel for defendant-appellant would not be able to address the issue of the alleged traffic violation, except to indicate that it was on the tape.
 {¶ 23} "Assignment of Error No. 6
 {¶ 24} "The verdict and conviction in this action were against the manifest weight of the evidence."
 {¶ 25} Appellant's first three assignments of error relate to the trial court's June 2, 2005 denial of his motion to suppress. We note that when reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594. An appellate court must independently determine, without deferring to a trial court's conclusions, whether, as a matter of law, the facts meet the applicable standard. State v. Klein
(1991), 73 Ohio App.3d 486, 488.
 {¶ 26} In appellant's first assignment of error, he contends that the trial court erred when it denied appellant's motion to suppress because there was no reasonable cause to stop him. Appellant asserts that he was not properly stopped because there was no traffic violation.
 {¶ 27} Denying the motion the court found, inter alia, that the stop was properly based upon an observed violation of R.C.4511.39(A). This section provides, in relevant part: "When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle or trackless trolley before turning."
 {¶ 28} Appellant argues that he did not violate the statute because: 1) he was stopped at a stop sign and not "traveling" as provided in the statute and 2) he was not sure where to turn until he arrived at the stop sign. We note that whether or not appellant may have had a defense to the charge is irrelevant.[1] At the time of the stop, Officer Clingenpeel had a reasonable belief that appellant violated R.C. 4511.39(A); that is all that was required. Officer Clingenpeel consistently indicated that failure to signal was the reason appellant was stopped. Appellant's first assignment of error is not well-taken.
 {¶ 29} In his second assignment of error, appellant argues that the trial court erred in denying appellant's motion to suppress because he had been arrested without probable cause. Appellant asserts that he did not fail to display his driver's license in violation of R.C. 4507.35; rather, he was prevented from doing so. Appellant further contends that because the license was not "on his person," he did not violate R.C.4507.35.[2] The state counters that even assuming that there was no probable cause to arrest appellant for failure to display his driver's license, ample evidence existed to support appellant's OVI arrest.
 {¶ 30} After careful review of the videotape of the stop and the transcript of the ALS hearing we conclude that the trial court did not err in finding that probable cause that appellant violated R.C. 4507.35 existed at the time of the arrest. Officer Clingenpeel asked appellant multiple times to get back in the vehicle and he indicated the reason for the traffic stop. Appellant continued to argue with the officer and refused to get back in the vehicle. Appellant was asked for his driver's license; he stated that it was in the vehicle. Appellant was then told to get the license, proof of insurance, and the vehicle's registration. Appellant continued to argue with the officer (at that point, officers) and was placed under arrest for failing to display his license. The language of the statute states "on or about the operator's person." First, appellant did not deny having his license and; moreover, the fact that he indicated that it was in the vehicle could reasonably be interpreted as "about" his person. Regardless, by the time appellant's license was recovered, probable cause existed to arrest him for OVI. Appellant's second assignment or error is not well-taken.
 {¶ 31} Appellant's third assignment of error disputes the trial court's denial of his motion to suppress the results of the HGN test. Appellant argues that because Officer Clingenpeel testified that the National Highway Traffic Safety Administration ("NHTSA") manual does not address administering the HGN test while a subject is handcuffed, the test was not performed in substantial compliance with the guidelines.
 {¶ 32} Upon review of the NHTSA manual, we agree with the trial court that there is no requirement that a subject hold his hands on the sides of his face. We recognize that appellant would not hold his head still and that an acceptable option was to have him hold his head with his hands. However, as stated in the manual, officer safety is the first consideration during a traffic stop. At the ALS hearing, Officer Clingenpeel detailed the procedure he used while performing the HGN test. Clingenpeel testified that due to appellant's behavior he could not remove appellant's handcuffs. Clingenpeel further testified that he has never had a problem with people keeping their heads still.
 {¶ 33} Based on the foregoing, we cannot say that the trial court erred when it denied appellant's motion to suppress the results of the HGN test. Appellant's third assignment of error is not well-taken.
 {¶ 34} Appellant argues in his fourth assignment of error that the trial court erroneously denied his motion for a jury view. It is well-established that a trial court has broad discretion in deciding whether to grant a request for a jury view. State v. Zuern (1987), 32 Ohio St.3d 56, 58. In this case, appellant requested a jury view of the route driven by appellant to "help the jury to see the conditions, as well as shed light on the road conditions [to] better enable the jurors to judge the credibility of the witnesses." Denying the motion, the court concluded:
 {¶ 35} "The court doesn't think that the jury view would be helpful or necessary. It is probably irrelevant based on the time of day, that it was at night it is my understanding; especially based upon the motion hearings that we have had in this matter previously with videotape evidence. The videotape is going to show actually where the Defendant was driving. I think that is probably the best evidence."
 {¶ 36} Based on the foregoing, we must conclude that appellant has failed to demonstrate that the trial court's decision in this case was unreasonable, arbitrary or unconscionable. See Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Appellant's fourth assignment of error is not well-taken.
 {¶ 37} In appellant's fifth assignment of error he disputes the trial court's ruling precluding him from arguing to the jury the merits of the underlying traffic offense. Prior to closing arguments the parties discussed with the court whether it was permissible for appellant's counsel to discuss the elements of the offense of failure to signal, R.C. 4511.39(A); also, whether the jurors could have a copy of the text of the statute during deliberations. Denying the above, the court stated:
 {¶ 38} "[T]alking about the propriety of the stop, which there has been a suppression hearing and also it was an issue at a court trial for the court, seems to me as if counsel wants to argue law to the jury and that is not going to be allowed. I guess you can talk about the stop and whether or not you think — I am not even sure you can talk about whether the law is good or bad. At this point I don't think you can talk about the law at all. * * *. I'm not sure you can just start talking about all of the elements of the offense or any of that because that is not for them to decide."
 {¶ 39} The jury in this case was charged with determining whether appellant violated R.C. 4511.19(A)(1)(a), not whether appellant violated R.C. 4511.39. In its June 2, 2005 judgment denying appellant's motion to suppress, the court specifically found that Officer Clingenpeel had reasonable suspicion to stop appellant based upon a traffic violation. In addition, the parties stipulated that appellant was stopped because "he did not turn on his turn signal 100 feet before the intersection of Clough and Campbell Hill Road as required under Ohio Revised Code Section 4[5]11.39(A)." Thus the factual issues with regard to the offense had been settled; further, any arguments regarding the interpretation of the statute, particularly the word `traveled' had been properly addressed by the trial court. Accordingly, appellant's fifth assignment of error is not well-taken.
 {¶ 40} In appellant's sixth and final assignment of error he argues that the jury's verdict was against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "* * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52.[3]
 {¶ 41} After careful consideration of the facts of this case, and in light of the disposition of appellant previous assignments of error, we cannot that that the jury lost its way when it found appellant guilty of OVI. Officer Clingenpeel's testimony clearly set forth the factors which led to appellant's arrest for OVI and was corroborated by the videotape of the stop. Based on the foregoing, we find that appellant's sixth assignment of error is not well-taken.
 {¶ 42} On consideration whereof, we find that appellant was not prevented or prejudiced from having a fair trial and the judgment of the Bowling Green Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J. Pietrykowski, J. Glasser, J. concur.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Impossibility, under R.C. 2901.21(A), has been recognized as a defense. See State v. Acord, 4th Dist. No. 05CA2858,2006-Ohio-1616.
[2] R.C. 4507.35(A) provides:
"The operator of a motor vehicle shall display the operator's driver's license, or furnish satisfactory proof that the operator has a driver's license, upon demand of any peace officer or of any person damaged or injured in any collision in which the licensee may be involved. When a demand is properly made and the operator has the operator's driver's license on or about the operator's person, the operator shall not refuse to display the license. A person's failure to furnish satisfactory evidence that the person is licensed under this chapter when the person does not have the person's license on or about the person's person shall be prima-facie evidence of the person's not having obtained a driver's license."
[3] Because the charge at issue is a misdemeanor, this court sits as the ninth juror.